UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CARRIE M. HALL,

    Plaintiff,

v.

MEGAN HERDNER, *et al*,

    Defendants.

Case No. C08-5013 RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:
August 22, 2008**

Before the court is Defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss. (Dkt. # 17). Plaintiff Carrie Hall filed a civil rights lawsuit under 42 U.S.C. § 1983 against Megan Herdener, Mary Colter[1], Christina Abby, Sherry Fielding and Lara Strick, claiming that they violated her Eighth Amendment rights when they failed to timely provide medical treatment. (Dkt. # 5).

Ms. Hall has failed to file a response to the motion to dismiss. Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the court as an admission the motion has merit.

After careful review of Defendants' motion and Plaintiff's complaint, the Court finds that Plaintiff has stated a claim for violation of her Eighth Amendment rights, but that Defendants'

---

[1] Plaintiff named Megan Herdner and Mary Coultier as defendants; the correct spelling of their surnames is Herdener and Colter.

REPORT AND RECOMMENDATION - 1

motion to dismiss should be granted on the grounds of qualified immunity.

## I. PLAINTIFF'S ALLEGATIONS

Ms. Hall alleges that Christine Abby, a medical provider, Megan Herdener, Dr. Colter, Dr. Laura Strick and Nurse Sherry Fielding violated her Eighth Amendment rights and subjected her to unnecessary pain. (Dkt. # 5, p. 4).

**A. Claims Relating to Mastoiditis**. Ms. Hall alleges that in September of 2007, Defendant Herdener started her on antibiotics for an ear infection. *Id*. Subsequently, Ms. Hall was hospitalized and diagnosed with Mastoiditis and treated with antibiotics and given Diladad for pain. *Id*. Upon her release, she spoke with the pain specialist and informed him that the Washington Correction Center for Women (WCCW) only issued Oxycodone for pain. *Id*. Ms. Hall alleges that she was told so long as she stayed on the antibiotics, she would continue to be given Oxycodone for her pain. *Id*. After she returned to the institution, Ms. Hall alleges that Defendant Herdener discontinued the Oxycodone after three days although Ms. Hall was still in severe pain. *Id*. Ms. Hall alleges that she continued to take the antibiotics but they started to take a toll on her body and her hair was beginning to fall out. *Id*. She requested several times to be seen at the clinic, but was ignored so she quit taking the antibiotics. *Id*.

Ms. Hall alleges that on October 18, 2007, she was given a CT Scan which indicated that the lump had improved, but revealed that the Mastoiditis still remained. Ms. Hall claims she is still experiencing extreme head pains and is still being refused medical attention. *Id*. p. 5.

Ms. Hall alleges that on October 16, 2007, she complained of stomach camps due to her IBS, but Defendants did not provide her with her medication, Bentyl. *Id*., p. 4. Instead, Defendant Fielding put her on a liquid diet which did not resolve her problem. *Id.* Ms. Hall alleges that she has filed several grievances against Defendants Herdener and Fielding and believes that because of

REPORT AND RECOMMENDATION - 2

this Defendant Fielding has stopped providing her with the medical attention that she needs. *Id*.

Ms. Hall also alleges that she signed up for sick call on several occasions but was never seen. *Id*.

Ms. Hall complains that on October 31, 2007, Defendants merely took her temperature and on November 1, 2007, she was refused to be seen and Defendants merely gave her Robaxin for her back. *Id*. On November 11, 2007, although she asked them to culture the Mastoiditis infection, which was draining out of her ear, nothing has been done. *Id*.

Ms. Hall alleges that when she spoke to the medical director Defendant Abby about her grievance relating to the Mastoiditis, Defendant Abby advised her that the institution had a formulary that they followed and that they did not need to follow recommendations of the hospital doctors. *Id*., p. 6.

Ms. Hall filed a grievance relating to her Mastoiditis requesting that she be continued on Oxycodone. (Dkt. # 5-2, p. 1). The response to the grievance dated October 29, 2007, stated

> A review of your medical chart reveals that you have been seen regularly for your systems, the CT scan done on 10/18/07 shows that there has been "significant improvement." It has also been explained to by RN Doyle the DOC providers may substitute medications in accordance with the pharmacy formulary. It is possible your recovery has been adversely affected by your unwillingness at time to take the medication as prescribed.

*Id*.

The response to Ms. Hall's appeal of the grievance requesting further investigation and the correct pain medication for chronic pain, stated:

> HCA Abby met with you, interviewed Dr. Coulter and ARNP Herdner, and reviewed your medical chart.
>
> Based on her findings it is determined that your medical care is consistent with community standards. It has been determined by both internal and external specialists that narcotics for your varied and ongoing complaints would be clinically inappropriate and medically an unsound practice.

*Id*., p. 2

REPORT AND RECOMMENDATION - 3

**B.     MRSA Infection.**  Ms. Hall also alleges that she suffered from an MRSA infection on her left arm and in her crotch area, which began on November 23, 2007. Ms. Hall alleges that Defendant Herdener refused to put her on antibiotics, Nurse Fielding did not examine her, and when she was finally seen, Defendant Herdener refused to lance open the sites so that the pressure could be relieved. *Id*. Ms. Hall alleges that she filed an emergency grievance and also had the officer, Ebel Jr., take pictures and write an incident report to document that this was the same nurse who continues to deny her medical care.[2] *Id*. Ms. Hall further alleges that Defendant Herdener refused to give her hot packs even though she knew it was necessary to apply heat to the infected areas. *Id*., p. 6. Plaintiff alleges that on November 28, 2007, Defendant Herdener lanced one of the sites on her crotch area, but refused to treat her arm. However, on November 30, 2007, another provided, Mrs. Chewy, treated Plaintiff's arm. *Id*.

## II.  STANDARD OF REVIEW

The Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to the complaint. *Lee*, 250 F.3d at 688. All material factual allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the light most favorable" to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969); *Lee*, 250 F.3d at 688. A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

---

[2] Ms. Hall states that she attached a copy of this emergency grievance to her Complaint, however the grievance attached is dated October 10, 2007 and relates to her complaint that she was taken off Oxycodone for the Mastoiditis. (Dkt. # 5-2, pp. 1-4).

REPORT AND RECOMMENDATION - 4

*Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. *Jones v. Community Development Agency,* 733 F.2d 646, 649 (9th Cir. 1984); *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992). Although the Court must construe pleadings of pro se litigants liberally, the Court may not supply essential elements to the complaint that may not have been initially alleged. *Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). Similarly, in civil rights actions, a liberal interpretation of the complaint may not supply essential elements of the claim that were not initially pled. *Pena v. Gardner*, 976 F.2d 769, 471 (9th Cir. 1992).

Before the court "may dismiss a *pro se* complaint for failure to state a claim, it "must provide the *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to dismissal." *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992); *see also Noll v. Carlson,* 809 F.2d 1446, 1449 (9th Cir. 1987). However, leave to amend need not be granted where amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

### III. DISCUSSION

**A.  Plaintiff's 42 U.S.C. § 1983 Claim**

To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements,

REPORT AND RECOMMENDATION - 5

his complaint must be dismissed.

Ms. Hall claims violation of the Eighth Amendment. The Eighth Amendment requires prison officials to take reasonable measures to guarantee the health and safety of inmates. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An inmate claiming an Eighth Amendment violation relating to health care must show that the prison officials acted with deliberate indifference to a serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The plaintiff must prove both an objective and a subjective component. *Hudson v. McMillan,* 503 U.S. 1 (1992); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer,* 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney,* 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison officials must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health. *Id.* at 835. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). If one of the components is not established, the court need not inquire as to the existence of the other. *Helling*, 509 U.S. 25.

Prison authorities have "wide discretion" in the medical treatment afforded prisoners. *Stiltner v. Rhay*, 371 F.2d 420, 421 (9th Cir. 1971), *cert. denied*, 387 U.S. 922 (1972). To prevail on an Eighth Amendment medical claim, the plaintiff must "show that the course of treatment the

REPORT AND RECOMMENDATION - 6

doctors chose was medically unacceptable under the circumstances . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029. A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment. *Franklin v. Oregon,* 662 F.2d 1337, 1344 (9th Cir. 1981). Simple malpractice, or even gross negligence, does not constitute deliberate indifference. *McGuckin*, 974 F.2d at 1059. Similarly, a difference of opinion between a prisoner-patient and prison medical authorities regarding what treatment is proper and necessary does not give rise to a § 1983 claim. *Franklin,* 662 F.2d at 1344; *Mayfield v. Craven*, 433 F.2d 873, 874 (9th Cir. 1970).

Defendants argue that Ms. Hall's allegations are insufficient to state a constitutional claim because her complaints are merely disagreements about the treatment she was offered. (Dkt. # 17, pp. 5-6). Defendants argue that Ms. Hall disagrees with the offered treatment for her MRSA infections, that it was reasonable to discontinue Ms. Hall's course of Oxycodone for pain because she has a conviction for drug possession and that it is not reasonable for Ms. Hall to blame medical personnel when she voluntarily stopped taking the prescribed course of antibiotics. *Id*.

At this stage of the litigation, however, Plaintiff's allegations must be taken as true and construed in the light most favorable to her. Under *Farmer*, 511 U.S. 825, "deliberate indifference" to a serious medical need exists "if [the officer] knows that [the] inmate face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (*quoting Hudson v. McMillian*, 502 U.S. 1 (1992)).

REPORT AND RECOMMENDATION - 7

While Ms. Hall alleges that she voluntarily ceased the course of prescribed antibiotics, she alleges that she did so because they "started to take a toll on my body and my hair was beginning to fall out." (Dkt. # 5, p. 4). She also alleges that "I requested several times for the clinic to see me but I was ignored, therefore I had to quit taking the anti-biotics." *Id*.

In addition, Ms. Hall alleges that she "filed several grievances on both Herdner and Fielding, and because of this Fielding stopped providing me with the medical attention that I needed. . . . I signed up for sick-call several times but I was never once seen." Ms. Hall alleges that she has filed several grievances against Defendants Herdener and Fielding and believes that because of this Defendant Fielding has stopped providing her with the medical attention that she needed. *Id*.

Thus, drawing all reasonable inferences from the record most favorably to Ms. Hall, the court concludes that Ms. Hall has alleged facts demonstrating a violation of her Eighth Amendment rights. The question now becomes whether Defendants are, nonetheless, entitled to qualified immunity.

**B.  Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are protected from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997). To determine whether a prison official is entitled to qualified immunity, the court must perform a two part inquiry. First, the court considers "whether the law governing the official's conduct was clearly established." *Somers*, 109 F.3d at 617. If the law was not clearly established at the time, "the official is entitled to immunity from suit." *Id.* If the law was so established, the court next asks whether "under that law, a reasonable official would have believed the conduct was lawful." *Id.* Thus, "an official is denied

REPORT AND RECOMMENDATION - 8

qualified immunity only if the law was clearly established and a reasonable official could not have believed the conduct was lawful." *Id.*

As noted above, the Court has ascertained that the facts read in the light most favorable to Ms. Hall, as required for this 12(b)(6) motion, demonstrate a violation of her Eighth Amendment rights. The Court must now decide whether the "contours" of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 at 837. Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. *Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002). In these circumstances, he would be entitled to qualified immunity. *Saucier*, 533 U.S. at 205.

Defendants argue they are entitled to qualified immunity because they acted reasonably under the circumstances. (Dkt. # 17, p. 11). The Defendants argue that they are all health care professionals who would be able to exercise their judgment regarding treatment options for the Ms. Hall and that the treatment provided Ms. Hall was reasonable even though it was not agreeable to her. *Id.*

Ms. Hall's allegations and the attachments to her Complaint reflect that she was seen for her symptoms and treated, albeit not to her satisfaction. With regard to the Mastoiditis, the CT scan performed on October 18, 2007 reflected improvement and Ms. Hall was advised that DOC

REPORT AND RECOMMENDATION - 9

providers may substitute medications in accordance with pharmacy formulary. (Dkt. # 5, pp. 5-6). Defendants were aware of Ms. Hall's request for additional pain medication. (Dkt. # 5-2, p. 1). In the October 29, 2007 response to Ms. Hall's initial grievance relating to her Mastoiditis, it is noted that "it is possible [Ms. Hall's] recovery has been adversely affected by [her] unwillingness to take the medication as prescribed." *Id*. In the Level II appeal response of that grievance, it is stated:

> HCA Abby met with you, interviewed Dr. Coulter and ARNP Herdner and reviewed your medical chart.
>
> Based on her findings, it is determined that your medical care is consistent with community standards. It has been determined by both internal and external specialists that narcotics for your varied and ongoing complaints would be clinically inappropriate and medically an unsound practice.

*Id*., p. 2.

In addition, Ms. Hall acknowledges that she received treatment regarding her MRSA, including antibiotics and lancing, although she disagrees with the timing and application of the treatment. (Dkt. # 5, pp. 5-6).

In these circumstances, the Court cannot say that reasonable officers in the Defendants' positions would necessarily have perceived that in denying Ms. Hall the narcotics or course of treatment she requested, that their conduct was unlawful or that the risk of continuing the course of treatment they chose was so high as to be constitutionally impermissible. The record provided by Ms. Hall indicates that Defendants did not ignore Ms. Hall's conditions, but responded to her medical needs.

For these reasons, the undersigned recommends that the Defendants' motion to dismiss as to Defendants on the grounds of qualified immunity be granted.

**C.     Personal Participation of Defendants Colter, Abby and Strick**

REPORT AND RECOMMENDATION - 10

Under 42 U.S.C. § 1983, claims may only be brought against people who personally participated in causing the alleged deprivation. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). To obtain relief against a defendant, the plaintiff must prove the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold*, 637 F.2d at 1355; *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, which he or she is legally required to do, which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Rizzo v. Goode*, 423 U.S. 362, 370-71 and 375-77 (1976); *Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant"s actions and the harm allegedly suffered by plaintiff. *Aldabe*, 616 F.2d at 1092; *Rizzo*, 423 U.S. at 371.

Defendants in a 42 U.S.C. § 1983 action cannot be held liable based on a theory of respondeat superior or vicarious liability. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Bergquist v. County of Cochise*, 806 F.2d 1364, 1369 (9th Cir. 1986). Absent some personal involvement by the defendants in the allegedly unlawful conduct of subordinates, they cannot be held liable under § 1983. *Johnson*, 588 F.2d at 743-44.

Defendants argue that Defendants Colter, Abby and Strick should be dismissed with prejudice from the lawsuit as Ms. Hall does not mention how they personally participated in any alleged constitutional violation. (Dkt. # 17, p. 7). The Complaint contains no allegations of wrongdoing against any of these defendants. The only allegation against Defendant Abby is that

REPORT AND RECOMMENDATION - 11

Defendant Abby provided an explanation regarding the institution's pharmacy formulary. (Dkt. # 5, p. 6). This allegation is insufficient to state a cause of action under Section 1983.

Ordinarily, the court would recommend that Ms. Hall be given notice and an opportunity to amend her complaint. *See Doe v. United States*, 58 F.3d 494 (9th Cir. 1995). However, such amendment would be futile in light of the court's recommendation that Defendants are entitled to qualified immunity. Accordingly, the court recommends that Ms. Hall's claims against Defendants Colter, Abby and Strick be dismissed without leave to amend.

## IV. CONCLUSION

The undersigned concludes that Defendants are entitled to qualified immunity. Therefore, the Court should grant Defendants' motion to dismiss. A proposed order accompanies this Report and Recommendation. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **August 22, 2008**, as noted in the caption.

DATED this  25th  day of July, 2008.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12